We will next hear the case of Isaacs v. Snyder v. Konawa Public School District, number 217039. Counsel, you may proceed. May it please the Court, Counsel. Your Honor, there are two important constitutional issues before you today. Special relationship doctrine and danger creation theory. You've heard some and you've had some interesting questions on danger creation theory and whether it applies in this case. The reason that the special relationship doctrine applies… Are you arguing danger creation as well? I thought you were arguing just the special relationship. Your Honor, I argued in my brief special relationship doctrine and danger creation theory, and I can articulate that if you would like me to. The reason I've pled both. You pled both? Well, that I didn't plead both, but that I argued both in my appellate brief. But my question is, below, wasn't this presented below as a special relationships issue? No, Your Honor, it was presented as both. And filing the motion to dismiss, the school district and the defendants argued that special relationship and danger creation did not apply. Well, that's because one argument, I mean, the other defendants argued, I mean, the other plaintiffs argued danger creation. That is true, Your Honor. They chose danger creation only. I believe that alternative remedies… If we look at your complaint and we look at your opening brief, we will find danger creation as an affirmative claim. No, you will not, Your Honor. But without having it affirmatively pleaded, defendants were able to identify that Plaintiff was raising those issues under a 14th Amendment due process violation, which was clearly identified in the original state court complaint. But you don't talk about danger creation as a separate stand-alone theory in the brief below or here that you're asserting. There's no title. There's no listing of a heading or anything else. Okay, here's our second claim, danger creation. I don't believe that's correct, Your Honor. I believe we did, but if I didn't, I apologize. Well, okay. We'll sort it all out. The special relationship was articulated in De Cheney in 1999, and it says that the state's affirmative act of restraining the individual's freedom to act through incarceration, institutionalism, or other similar restraint. I'm relying on the other similar restraint that was articulated by the Supreme Court in De Cheney. But in citing De Cheney, our court in De Anzona said, and I quote, A plaintiff must show involuntary restraint by the government to have a claim under a special relationship theory. If there is no custodial relationship, there can be no constitutional duty. We know from Maldonado that there is no custodial relationship based on the school attendance laws. You have argued to us that by virtue of being restrained their freedom of choice for these two young girls in the school bus, that they were effectively under restraint. But we know from De Anzona that the restraint has to be involuntary, and obviously their parents voluntarily put them on the bus, voluntarily chose not to go to the softball game to pick up their kids, and voluntarily put them on the bus. So because the restraint is not involuntary, aren't we foreclosed under De Anzona from finding a special relationship? Your Honor, I'm going to package that up a little bit because that hit about four of my points in my argument. This court, in the previous three situations involving schools and special relationships, in Maldonado in 92, Graham in 94, and Armijo in 98, in each of those three cases, they found that there was no custody in finding no special relationship. Because there was not an affirmative act or an affirmative act by a state actor restraining those minor children. And so those three cases guided the district court's decision in this case, but I believe they're distinguishable in this case. I understand that, and I'm crediting your distinction, just to be clear. And the reason their distinction is because there becomes an affirmative duty to protect. In this case, when the bus driver, through his actions, imposed the restriction on the freedom of Jalen and Lily to act on their own behalf to protect themselves in the face of a known danger. How did he do that? By driving the bus down the highway, Your Honor. These minor children are unable to look after their own interests. In Maldonado, a child hung himself in a cloakroom. So you're arguing, and I understood this from your briefs, that the special relationship can arise just at the moment of the crisis or shortly before that, even if it didn't exist before. Your Honor, I am arguing... What case law do you have for that? I don't have any case law, Your Honor. That was part of my argument in my brief, that I'm asking this court to adopt a totality of circumstances standard for finding when custody, control, confinement, and restraint of a minor student's ability to protect themselves in the face of a known danger arises. And to follow up with Your Honor Bachrach, the voluntariness issue. The Supreme Court has said that children do not shed their constitutional rights at the schoolhouse gates. This court has recognized that principle. The Supreme Court has also, as well as this court, recognized the doctrine of in loco parentis, that students and administrators take on a parental role when they care for its children. How does that bear on De Anzona? Are you saying that our precedent in De Anzona is contrary to the in loco parentis doctrine of the Supreme Court and we should just say that De Anzona was wrongly decided? It's contrary to precedent? It said that the restraint has to be involuntary. And in fact, it was applied in that case to a daycare facility with regard to a five-year-old boy. If the five-year-old boy didn't have, you know, wasn't restrained, you know, to the extent that it created a special relationship, I don't see how we can jettison De Anzona and recognize special relationship here. And a lot of the voluntariness of it. And I would say, Your Honor, that De Anzona falls in line with the no affirmative act or control by a state actor that this court found in Mabalano, Graham, and Armijo. In this case, we have a state actor who is in physical custody and control of these children by the very nature of being passengers on a school bus. The school board and the driver has a duty to his passengers. That is undisputed. These children are owed a duty by that driver. The act of taking the children from the school to the softball game and then transporting the students back to the school after the softball game is an hours-long custody and control. It may not be involuntary, but I'm not relying strictly on the involuntary nature where the confinement and custody arose, Your Honor. I am looking at it from a totality of circumstances. Well, counsel, as with the danger creation theory, don't you still have to allege and prove conduct that shocks the conscience for a substantive due process claim? Under a special relationship doctrine, no, you do not, Your Honor. What's your authority for that? The DeShaney case, it didn't apply a shock the conscience standard under the… Well, this is an exception to DeShaney. It's still a substantive due process claim. Do you have a Tenth Circuit case that says that? That says you don't have to have shock the conscience in a special relationship doctrine, Your Honor? Yes. This court has parsed out the two theories over time. Well, do you have a case or don't you? I do not have a case, Your Honor. And in response to the court's inquiry about shock the conscience, as alleged in the state court petition in paragraph 14, the students recognized that the car driven by John TallBear was oncoming. It is also alleged in that paragraph that the other cars in front of the bus were pulling over to the shoulder and stopping. Who didn't stop in this case was Joseph Scoggins, the bus driver. He continued on in a purposeful intention act of continuing to drive towards the known danger. There is no requirement other than recklessness and intentional behavior on the part of a state actor to prove shock the conscience. And it is plaintiff's position in this case, appellate's position, that a bus driver driving a bus full of school children under a totality of circumstances argument towards a known danger in disregard of all of the other reasonable and safe options presented to him and then formulates a plan, either spoken or unspoken, to cross the center line, which we know happened, to allow the truck to impact the bus, or to avoid a collision in the face of all other reasonable safe options. That shocks the conscience, Your Honor. Does your complaint allege that Mr. Scoggins veered left to have the bus collide with the truck? Not specifically to have the collision, but it does allege that he did veer left and that was incorporated into the brief as well with the photograph, Your Honor. The defendant has said that there was a steep embankment so that he was not able to veer to the right. Is that in the amended complaint? It is not. There is no amended complaint on this case, Your Honor. Is it in the complaint? It is not. Or the petition, rather. Petition. No, it is not, Your Honor. But specifically in paragraph 14, there are allegations that other cars pulled over and stopped. Well, that may be different, though, because those other cars would have stopped. Presumably, Mr. Scoggins never would have seen those vehicles because those would have been ahead of him. Are you saying a steep embankment that would preclude him seeing further up the road? No, no. Let's say, you know, this is the road, and those vehicles would have presumably stopped right here. And Mr. Scoggins is here, so he's not going to see those vehicles at some point. Your Honor, I think that becomes a factual question. Maybe. And as this Court is aware, all facts alleged are taken in the light most favorable to the plaintiff. Plaintiff has alleged that other vehicles in front of the school bus stopped and that Mr. Scoggins did not stop his school bus. And I believe I forgot to, but I would like to reserve two minutes for rebuttal. Is that okay with the Court? You can. Your Honor, the involuntariness of the custody, control, confinement, and restraint must be viewed under a totality of circumstances. At the time the harm occurs, not an arbitrary point in time, which the District Court found to find that the voluntary act of the students getting on the bus precluded all special relationship doctrine application in this case. Hello again, Your Honor. My name is Justin Clyburn. Do you mind taking off your mask if you feel comfortable? Thank you. My name is Justin Clyburn, and I'll be arguing for the FLE's Conaway Public Schools and Mr. Joseph Scoggins. Your Honors, this case is about a school bus driver's perhaps negligent reaction to the sudden emergency presented by a reckless driver. And the subject of today's hearing, obviously, is not about whether Mr. Scoggins or the school district were negligent. Indeed, the defendants have not moved to dismiss those common law negligence claims, and there's no doubt that as a driver, a school bus driver has a common law duty to the passengers. But what we're here to decide, or to discuss, is whether the appellants have plausibly asserted claims under 42 U.S.C. Section 1983. Under the Due Process Clause, state actors are only liable for their own acts. We know there's the two exceptions, special relationship and danger creation theory. And I would like to start with special relationship, because that's what- When you're focusing on that, appellant argued that special relationship does not require shocks to conscience. What's your view on that? It's my understanding that every substantive due process violation requires a shock to judicial conscience standard. I'm not aware of any case law, a tensority law particularly, that says what the appellant argues. But are you aware of any law that specifically refutes that position? Not at this moment, Your Honor. Now, the special relationship doctrine requires a strict, involuntary, custodial relationship. And that's what triggers the duty to affirmatively protect a plaintiff from harm. As you know, the Supreme Court in De Cheney said this is often going to be in cases of incarceration, institutionalization, or other similar restraints of personal liberty. The appellants are arguing that junior high girls getting on a bus voluntarily to go to an extracurricular softball game and return on the bus is a similar restraint of personal liberty as the prisoners in the federal penitentiaries and the mental patients in our mental institutions. I don't believe that any case law supports that. And I do believe that if the court were to hold that a school bus driver has a constitutional special relationship to his passengers, then indeed every school bus accident would be a civil rights claim. Certainly there could be some that should be. But I don't believe that every single one should be a prima facie Section 1983 claim, as that would conflict with the Supreme Court's concern regarding that Section 1983 not replace state court law. As you know and you've mentioned, compulsory attendance laws do not create a special relationship. This court, this circuit, has not specifically ruled on whether there is a special relationship between a school bus driver and the passengers. But the Third and Sixth Circuits have ruled on that and said that there is not one. And I would like to argue that there's no special relationship explicitly pleaded in the petition, but even so the facts don't establish one. They show that these girls voluntarily boarded a school bus to go to a softball game. After completion of this extracurricular softball game, they voluntarily boarded the bus. And then on the way back to the schoolhouse is when there was this accident. The appellant seemed to argue that once that door closed and the wheels began moving, a special relationship was formed. And not only in the realm of school bus accidents would that be problematic, but I think that if that were the case when I leave hearing it on the RTD to go to DIA, then it would mean that that driver had established a special relationship with me and any negligence on his part could be a civil rights violation. You know, it's not clear to me exactly when the appellant's arguing that there was this special relationship developed. I'm not sure that he was arguing quite as broadly as you were. Long before the accident, they're on the school bus. One of the kids says, oh, I see my folks coming up the road here to pick me up. Stop, let me off. The bus driver would surely have done that. So I kind of understood the argument was that they weren't free to leave just prior to that crisis itself. Did you believe that their argument of not being free to leave was from the moment they stepped foot on the school bus all the way through the trip until the accident? I do, just because of the language used in the appellant's brief and in oral argument today, where counsel said that you have to look at this as an hours-long custodial relationship because of the duration of time from when they entered the bus at the school, went to the softball game, and then were reentering the bus to go back. And because he mentioned the hours-long custodial relationship, I understand their argument to be that once the door closed and the bus started moving, these girls obviously were restrained and could not leave the bus. But I believe that under the case law, that's not an involuntary restraint. That's a voluntary restraint of personal liberty that was not induced by Mr. Spoggins at the school district, but by the practical danger of motor vehicle traffic. As far as the danger-creation theory is concerned, as you know, I discussed briefly in the earlier argument that there needs to be affirmative conduct. And this Court has held that affirmative conduct does require some deliberateness and intent to harm. And the petition says that Mr. Spoggins veered left to avoid the accident. Do I recall in your earlier argument you mentioned John Talbert not being engaged in private violence? Yes, Your Honor. Could you elaborate on that argument? Yes, Your Honor. Under Hernandez v. Ridley, the circuit held that reckless driving does not constitute private violence simply because there is no intent to harm. It is reckless. It's in reckless disregard to others. But in Hernandez v. Ridley, two gentlemen were killed on a highway by a reckless driver. And this circuit, I believe in one or two sentences, said reckless driving does not constitute private violence. I believe that Gray makes it clear that there has to be some form of deliberateness. There has to be some form of intent to harm. And from the facts of the petition, it seems that Mr. Talbert was negligent. He was reckless and should not have been driving in the way he was. But just before the moment of impact, he corrected into his lane to avoid that accident. And therefore, there was no intent on his part to cause the accident. So there's no private violence. But apparently, under the precedent, there has to be an intent deliberately focusing on the victim, both by the third-party wrongdoer and by the representative of the state, the school bus driver? Yes, Your Honor. The appellants argue that because the girls were members of the six members of the team on the school bus, they were part of a discrete group and that any action that Mr. Scoggins took in navigating the bus would be directed at them. I believe that's a little too attenuated, personally. No, I understand that. But, I mean, as a matter of law, there has to be a directedness test met both as to the custodial person, Mr. Scoggins, and the third-party wrongdoer, Mr. Talbert. I agree. Hypothetically, if he wasn't, let me ask you about this distinction between recklessness and violence. If Mr. Talbert were intending to commit suicide, there would be no question, would there, that he was acting violently, not just negligently or even recklessly, that that would have been the equivalent of, you know, holding a bomb. He's trying to commit suicide. Would you agree that that would be considered, at least at the 12 v. 6 stage, violent? I would agree that that would be the case. Well, under 12 v. 6, why can't we reasonably, liberally construe the allegations in the petition that, in effect, Mr. Talbert was trying to commit suicide, that when he saw Mr. Scoggins veer left, he was going to try to commit suicide. He was going to veer right, and he was going to engineer a collision. I mean, obviously, we don't know what Mr. Talbert was thinking. He died. So why isn't that a reasonable inference, that he wasn't, in fact, intending to kill everybody? I think in this instance that that would not be an appropriate inference just based on the language of the petition where it says that Mr. Talbert corrected into the correct lane of travel. I can't say, no one can say, as you mentioned, what Mr. Talbert's intentions were, but according to the additional facts during the briefing, it's been alleged that Mr. Talbert was weaving in and out of traffic and getting back into his correct lane of travel, and he'd just come across a bridge where, I don't know, we'll have to get to those facts if we get back to the district court. But I don't believe that the facts in the petition support that inference. But did you say earlier that as part of the plaintiff's burden to show that Mr. Talbert specifically directed an intent to injure all the passengers on the bus? Yes, or more specifically, the appellants. I believe that there has to be some sort of deliberateness in directing this. All the passengers on the bus. So if Talbert had survived and he had said, gosh, I feel terrible about this accident, I thought the bus was so big that if I hit it, it would hurt me, but I didn't think people on the bus would be hurt. Would that be the end of the case? No, Your Honor. I believe that that would be not necessarily an intent to harm, but certainly an intent to place someone at risk of harm because no one can be certain that a head-on collision, despite whatever vehicle you're in, would not result. I thought the bus was empty. I thought the bus returning home empty. So maybe I was intending to put at harm's risk the driver, but I really thought that if it wasn't empty, maybe it might have even had a sign. I'm sure it didn't. But what if that testimony had come out? At this point, I believe that if that were the case and we had filed our 12B6 motion, it would not have been granted because that would be a self-serving statement by Mr. Talbert and it would certainly be disputed as to what his intent was. I'm just trying to parse out the difference between what Mr. Scoggin's intent towards the victims might have been. Because we know there has to be an intent directed right to the victims themselves. And I'm trying to parse out the difference, the definitional difference between Mr. Scoggin's intent or knowledge as to the victims versus Mr. Talbert's intent to the victims. I believe that it's the same for each in that it's either an intent to harm or an intent to place. A specific identifiable category of people. A discrete plaintiff, yes. Your Honors, finally, I would just like to point out that the petition did not plead any claims against Mr. Scoggins in his individual capacity. Mr. Scoggins and counsel moved to dismiss based on the fact that there were no claims against him individually. The appellants were put on notice of that position of ours and rather than amend to state that we are stating claims individually against this man, they stood on the petition and the district court correctly dismissed official capacity claims against Mr. Scoggins. But also that there just simply were no individual claims made. We would respectfully request that you affirm the district court's ruling. And we thank you for your time. Thank you. I'm waiting for my time to pop up, Your Honors. This is a new time system for us. Can I have another 15 minutes? Does everybody in the courtroom have a wristwatch? Amy, do you know how much time he has? I believe it's a little over three. Two minutes and nine seconds? Okay, because honestly, I can keep time. I mean, I can do it in two minutes, Your Honor. All right, let's do two minutes and nine seconds. Your Honor, involuntariness was not defined in DeShaney. And in this court, in Graham, it also said that the precise nature of the restraint is undefined. However, this court recognized in Armijo that there can be situations when a student that is confined to a school counselor's car could amount to a custodial situation. No, I don't think that's what Armijo said. I think Armijo said, even assuming that, that is, if the argument was made, but we're not addressing it one way or the other at all. But even assuming that, the argument would fail. There's nothing to say that. No, and what I said, Your Honor, is that in DICTA, Your Honor, It wasn't DICTA even. It was just simply saying, we're not even going to address it in DICTA or a holding. But if it were true, there's another problem you got in any event. So to argue that Armijo held that, is just not reading the opinion at all correctly, in my opinion. If this court grants plaintiff appellant's relief, it will not turn every school bus action into a due process 1983 case. Plaintiff is appealing to this court to establish a test under the Special Relationship Doctrine that if a plaintiff appellant meets the affirmative duty to protect under the Special Relationship Doctrine as it exists, and custody, control, confinement, and restraint are looked at under a totality of circumstances standard, and if plaintiff can meet a shocks-the-conscious standard that this court has inquired about today, and that shocks-the-conscious standard involves intentional, deliberate, or dangerous actions directed at a discreet plaintiff, then plaintiff can show, if plaintiff can show that those elements are met in a school student setting, then the Special Relationship Doctrine can apply. Thank you, Your Honors. Thank you, Counsel. Case will be submitted. Counselor, excused. Thank you for the arguments this morning. Thank you.